UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN A SCHULTZ,

      Plaintiff,

v.                                                   Case No.:  2:20-cv-400-FtM-38MRM

WILSON LIGHTING OF NAPLES,
INC., BRIAN WILSON and
ROBERT WILSON, III,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice ("Joint Motion").  (Doc. 11).  Plaintiff John Schultz III and Defendants Wilson Lighting of Naples, Inc., Brian Wilson, and Robert Wilson III request that the Court approve the parties' settlement, dismiss the case, and reserve jurisdiction to enforce the agreement.  (*Id.* at 1).  After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the Joint Motion (Doc. 11) be **DENIED WITHOUT PREJUDICE**.

### BACKGROUND

Plaintiff filed his Complaint in this matter on June 4, 2020.  (Doc. 1).  Plaintiff asserts several claims, including a violation of the Fair Labor Standards Act ("FLSA") alleging that Defendants failed to pay him one and one-half times his base

hourly wage rate for hours worked in excess of forty hours per week.  (*Id.* at 6).
Plaintiff also alleges two breach of contract claims, one asserting that Defendants
unilaterally altered the employment contract and the other asserting that Defendants
failed to give proper written notice of termination or sufficient cause.  (*Id.* at 6-9).
Plaintiff, however, does not allege a specific sum of damages for any of his claims.
Defendants have not filed an Answer.

The parties filed their first Joint Motion for Approval of Parties' Settlement
Agreement and Stipulation of Dismissal with Prejudice on July 13, 2020.  (Doc. 8).
On August 4, 2020, the Undersigned issued a Report and Recommendation
recommending that the Joint Motion be denied without prejudice because the
Settlement Agreement contained a confidentiality provision.  (Doc. 9 at 3-4).  The
presiding United States District Judge accepted and adopted the Undersigned's
Report and Recommendation on August 19, 2020.  (Doc. 10).  The parties then filed
this Joint Motion on September 30, 2020.  (Doc. 11).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether
the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the
claims raised.  *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir.
1982); 29 U.S.C. § 216.  There are two ways for a claim under the FLSA to be settled
or compromised.  *Lynn's Food Store, Inc.*, 679 F.2d 1350 at 1352-53.  The first is under
29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of
unpaid wages owed to employees.  *Id.* at 1353.  The second is under 29 U.S.C. §

216(b) when an action is brought by employees against their employer to recover back wages.  *Id.*  When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable.  *Id.* at 1353-54.

The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages.  *Id.* at 1354.  Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the Settlement Agreement below.

## ANALYSIS

### I.    Bona Fide Dispute

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties.  As noted in their Joint Motion, Plaintiff alleges that while employed by Defendants, Plaintiff "was misclassified as exempt from the overtime

provisions of the FLSA and worked overtime hours for which he was not compensated" and that Defendants breached their contract with Plaintiff. (Doc. 11 at 1 (citing Doc. 1)). Although Defendants have yet to file an Answer in this case, they deny these allegations in the Joint Motion. (*Id.* at 2). Accordingly, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

The Undersigned addresses the monetary terms, attorney's fees, and non-cash concessions separately below.

## II.   Monetary Terms

As indicated above, Plaintiff contends that he regularly worked in excess of forty hours within a work week and that Defendants deprived him of proper overtime compensation. (Doc. 1 at 6). Plaintiff, however, does not allege a specific sum owed to him. Rather, Plaintiff generally asserts that he is entitled to unpaid overtime wages and "liquidated damages in an amount equal" thereto. (*Id.*).

Nevertheless, the parties' settlement is for a total of $6,000, including $1,250 "as wage based damages," $2,500 "as liquidated and all other damages, including for all other claims," and $2,250 "as attorneys' fees and costs negotiated separately and without regard to the amount paid to settle these claims." (Doc. 11-1 at 2). The parties' briefing states that Defendants "conducted an extensive review of Plaintiff's time and pay records to determine the number of overtime hours that Plaintiff had historically worked and for which he received compensation." (Doc. 11 at 4). The parties, however, have not shared the results of that review or any specifics of the damages calculation with the Court.

4

The Undersigned previously found that "[a]bsent a break-down of the lump sum settlement—as to the amount attributable to lost wages (including a statement as to the number of hours and amount of lost wages claimed by Plaintiff), liquidated damages, and Plaintiff's attorney fees—the Court cannot determine" whether the settlement is a fair and reasonable. *Chavez v. BA Pizza, Inc.*, No. 2:18-CV-375-FTM-99MRM, 2018 WL 3151861, at *2 (M.D. Fla. June 12, 2018), *report and recommendation adopted*, No. 2:18-CV-375-FTM-99MRM, 2018 WL 3135944 (M.D. Fla. June 27, 2018). Although the parties broke the settlement sum into component amounts for damages for lost wages, liquidated damages (including consideration for other claims), and attorney's fees, the parties provided no "statement as to the number of hours and amount of lost wages claimed by Plaintiff." *Id.* Additionally, the briefing does not contain a description of the review undertaken by the parties to arrive at these amounts. Thus, despite the parties' conclusory statement that "the settlement adequately compensates Plaintiff for any potential wage claims," the Court is unable to evaluate whether the proposed monetary terms are a fair and reasonable resolution of the FLSA dispute. (*See* Doc. 11 at 4).

## III.   Attorney's Fees

The Settlement Agreement specifies that Defendants agree to pay a total of $2,250 for attorney's fees and costs. (Doc. 11-1 at 2). Additionally, in the Joint Motion, the parties note that "[t]he attorney's fees and costs agreed upon to be paid by Defendants under the Parties' settlement were never (and are not) a percentage of any total recovery in this case" and that "Plaintiff's attorney's fees and costs in this

case are separate and apart from the amounts to be paid to Plaintiff under the Parties' Agreement." (Doc. 11 at 5-6).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Here, the parties assert that they negotiated the attorney's fees as a separate amount, apart from the sum Plaintiff will receive. (*See* Doc. 11 at 5-6; Doc. 11-1 at 2). The Undersigned, therefore, finds that the parties agreed upon the attorney's fees without compromising the amount paid to Plaintiff. And the amount of fees appears fair and reasonable given the procedural posture of this case.

## IV.   Non-Cash Concessions

The proposed Settlement Agreement also contains several non-cash concessions.  A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding.  *See Jarvis v. City Elec. Supply Co.*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933023 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties.  *Bell v. James C. Hall, Inc.*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-CV-409-ORL-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses below each of the non-cash concessions made by the Plaintiff under the proposed settlement.

## A.    Medicare Secondary Payer

First, the Settlement Agreement contains a provision regarding indemnification for medical expenses. (Doc. 11-1 at 2). Specifically, the provision states:

> Medicare Secondary Payer. The Parties to this Agreement represent that none of the monies paid under this Agreement are for (i) payment of medical expenses incurred by Schultz, or (ii) injuries for which Schultz has received or can receive Medicare or Medicaid benefits. Schultz is not now and has never been enrolled in Medicare or Medicaid. **Schultz nonetheless agrees to indemnify and defend Wilson Lighting against any loss or liability it incurs due to Medicare conditional payments related to events underlying this settlement.** Nothing in this Agreement prevents either party from: (i) communicating information about this Agreement for compliance purposes under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; or (ii) otherwise complying with these laws.

(*Id.* (emphasis added)).

The parties do not address the fairness or reasonableness of this non-standard provision. For that reason alone, the Joint Motion should be denied without prejudice. The Undersigned is also unsure why this provision is even relevant to a resolution of this FLSA action. Neither the Complaint nor the Joint Motion references any dispute or claim involving Medicare, yet the proposed settlement seeks to impose Medicare-related obligations – specifically, a duty to indemnify *and to defend* – upon Plaintiff. Without more information from the parties, the Court simply cannot determine the reasonableness or fairness of this provision.

**B.     Mutual General Release of Claims**

Next, the parties' Settlement Agreement contains a Mutual General Release of

Claims provision stating, in relevant part, that "the Wilson Lighting Released

Parties" are released from:

> [A]ny and all claims, cross-claims, demands, liabilities,
> causes of action, damages, costs, attorneys' fees, expenses,
> and compensation whatsoever, of whatever kind or nature,
> in law, equity or otherwise, whether known or unknown,
> vested or contingent, suspected or unsuspected, that Schultz
> may now have, has ever had, or hereafter may have relating
> directly or indirectly to the allegations in the Lawsuit or
> Schultz's employment by Wilson Lighting.

(Doc. 11-1 at 3).  The clause explicitly lists the following claims to be released:

> [T]hose arising under Title VII of the Civil Rights Act of
> 1964, as amended; the Civil Rights Act of 1991; the Equal
> Pay Act; the Americans With Disabilities Act of 1990; the
> Rehabilitation Act of 1973, as amended; the Age
> Discrimination in Employment Act, as amended
> ("ADEA"); Sections 1981 through 1988 of Title 42 of the
> United States Code, as amended; the Immigration Reform
> and Control Act, as amended; the Workers Adjustment and
> Retraining Notification Act, as amended; the Occupational
> Safety and Health Act, as amended; the Sarbanes-Oxley Act
> of 2002; the Consolidated Omnibus Budget Reconciliation
> Act ("COBRA"); the Employee Retirement Income
> Security Act of 1974, as amended ("ERISA"); the National
> Labor Relations Act ("NLRA"); and any and all state or
> local statutes, ordinances, or regulations, as well as all
> claims arising under federal, state, or local law involving
> any tort, employment contract (express or implied), public
> policy, wrongful discharge, or any other claim.

(*Id.*).[1]

---

[1]  The Undersigned notes that Plaintiff also waived any claims arising under ADEA
"that accrued prior to the Effective Date" of the Settlement Agreement in Section

Notably, this Mutual General Release of Claims is not limited to solely the FLSA and breach of contract claims at issue but is, instead, broadly written to include almost any legal claim Plaintiff may have.  (*See id*.).

Nonetheless, the Undersigned recognizes that the provision is a mutual concession.  (*See id*.).  Indeed, the Settlement Agreement releases Plaintiff from the following:

> [A]ny and all claims, cross-claims, demands, liabilities, causes of action, costs, attorneys' fees, expenses, and damages whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Wilson Lighting may now have, has ever had, or hereafter may have relating to Schultz, from the beginning of time through the Effective Date.

(*Id*.).

Mutual general releases in FLSA settlement agreements are generally problematic.  *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-CV-528-FTM-29MRM, 2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 2:17-CV-528-FTM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31, 2018).  Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including forgone or released claims.  *Shearer v. Estep Const., Inc.*, No. 6:14-CV-1658-

_____

9(B) of the Settlement Agreement.  (Doc. 11-1 at 4).  Because this waiver is also encompassed by the breadth of the mutual general release, the Undersigned will not separately address it.

ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).  As the Court has noted, however, evaluating unknown claims is a "fundamental impediment" to a fairness determination.  *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52.  Indeed, the Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims."  *Shearer*, 2015 WL 2402450, at *3.  Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible."  *Id.* (quoting *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-CV-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).

Notwithstanding these difficulties, such provisions may be accepted when the Court can determine that such a clause is fair and reasonable under the facts of the case.  *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maintenance, LLC*, No. 2:18-CV-165-FTM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-CV-165-FTM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018).  In *Vela v. Sunnygrove Landscape & Irrigation Maintenance, LLC*, the Undersigned recommended approving such a provision, but in doing so, the Undersigned emphasized that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement."  *Id.* at *3-4.

In the case *sub judice*, however, there is no such explanation of the negotiation process.  The parties' briefing does not adequately address the fairness of the Mutual General Release of Claims provision, stating only that "[t]he Parties likewise agree

that the settlement adequately compensates Plaintiff for any potential wage claims, and for the release signed by the Plaintiff." (Doc. 11 at 4). Moreover, the Settlement Agreement itself states that the Mutual General Release of Claims provision was negotiated "in exchange for, and in consideration of, the payments, benefits, and other commitments described in Section 3." (Doc. 11-1 at 3). Section 3 of the Settlement Agreement contains the aforementioned financial terms of the settlement, including the monetary sum meant to compromise the FLSA claim. (*Id.* at 2). Thus, the Settlement Agreement explicitly states that the parties negotiated the Mutual General Release of Claims provision as part of the settlement of the FLSA claim and nothing in the parties' briefing suggests that additional consideration was exchanged. (*Id.* at 3).

In sum, although the Undersigned recognizes that both parties are forgoing their rights to bring claims, the parties gave no indication of what additional consideration was exchanged for these concessions or why that consideration should be deemed fair and reasonable. While Plaintiff has asserted breach of contract claims in this case, the parties have provided no information on any potential claims or allegations Defendants may have against Plaintiff such that Defendants' release can be determined to have any value for Plaintiff. It appears, therefore, that this provision potentially inures exclusively to Defendants' benefit. As a result, the Undersigned cannot recommend that the Mutual General Release of Claims provision be approved because there is insufficient evidence before the Undersigned

to permit a finding that the concession was made for either separate consideration or to the benefit of all parties.  *See Bell*, 2016 WL 5339706, at *3.

### C.    Non-Solicitation

The parties also included in their agreement a Non-Solicitation clause, prohibiting Plaintiff "from solicitating any Wilson Lighting employee or any Wilson Lighting customers for the two (2) year period beginning January 3, 2020," to the end of the Mutual General Release of Claims provision.  (Doc. 11-1 at 3).  Again, the parties provide no information on the negotiation process for such a concession, and the Court, therefore, cannot determine whether it was made for separate consideration or to the benefit of all parties.  *See Bell*, 2016 WL 5339706, at *3.

### D.    No Further Employment

Additionally, the Settlement Agreement contains a No-Further-Employment provision stating, in relevant part, that "Schultz permanently, unequivocally, and unconditionally waives any and all rights Schultz may now have, may have had in the past, or may have in the future to obtain or resume employment with the Wilson Lighting Released Parties.  Schultz agrees never to apply for employment by the Wilson Lighting Released Parties."  (Doc. 11-1 at 5).

A no future employment agreement plainly injures the plaintiff, and where the parties' briefing does not address the issue of additional consideration, courts cannot determine whether their inclusion in a settlement agreement represents "a fair and reasonable resolution of the parties' FLSA dispute."   *See Diviney v. Inisron Cafe Inc.*, No. 2:18-CV-236-FTM-38MRM, 2019 WL 5110620, at *2–3 (M.D. Fla. July 2,

2019), *report and recommendation adopted*, No. 2:18-CV-236-FTM-38MRM, 2019 WL 5140307 (M.D. Fla. July 18, 2019).  Nevertheless, the Undersigned has recommended approving such clauses where the facts of the case permit a finding that the provision was exchanged for sufficient consideration.  *See, e.g.*, *Siebert v. Novak Envtl. Servs., LLC.*, No. 2:18-CV-796-FTM-99MRM, 2019 WL 2929545, at *6 (M.D. Fla. July 7, 2019), *report and recommendation adopted*, No. 2:18-CV-796-FTM-38MRM, 2019 WL 2929544, at *1 (M.D. Fla. July 8, 2019) (concluding that the defendant's release of a counterclaim for a breach of the duty of loyalty against constituted "sufficient consideration for the Plaintiff's agreement not to accept or seek employment from the Defendant in the future" when the FLSA claim was part of a broader employment dispute).

Here, however, the parties' briefing does not address whether Plaintiff received any additional consideration in exchange for his agreement to the No-Further-Employment provision.  Thus, the Court is unable to determine whether including such a provision would be fair and reasonable resolution of the FLSA claim.

## D.    Non-Disparagement and Neutral Work Reference

Finally, the parties' Settlement Agreement contains a Non-Disparagement and Neutral Work Reference provision.  (Doc. 11-1 at 5).  Specifically, the provision states that "[t]he Parties agree that they shall not make disparaging statements about one another."  (*Id.*).  The provision further provides that "in response to any inquiry regarding Schultz's employment with Wilson Lighting, Wilson Lighting shall

provide a neutral work reference consisting of only Schultz's dates of employment and last position held." (*Id.*).

Notably, "Courts within this circuit routinely reject . . . non-disparagement clauses contained in FLSA settlement agreements because they 'thwart Congress's intent to ensure widespread compliance with the FLSA.'" *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15–CV–710–ORL–22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15–CV–710–ORL–22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14–CV–615–ORL–37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014)). The Court has also noted that "[p]rovisions in a FLSA settlement agreement that call for . . . prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12–CV–461–J–15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. Apr. 19, 2010); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09–CV–2250–T–23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010)). Additionally, the Undersigned has found that the same concerns are also inherent in a Neutral Work Reference provision. *Diviney*, 2019 WL 5110620, at *2 n.3.

Notwithstanding those concerns, the Court has approved such provisions where they have been negotiated for separate consideration or where there is a

reciprocal agreement that benefits all parties. *See Bell*, 2016 WL 5339706, at *3; *Smith*, 2014 WL 5690488, at *4 (citing *Caamal v. Shelter Mortg. Co.*, No. 6:13-CV-706-ORL-36, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013)).

Upon review, the Undersigned notes that the parties' briefing does not discuss whether the Non-Disparagement and Neutral Work Reference provision was negotiated for separate consideration or whether it would be enforceable. Although the parties may have intended for the Court to find that the Non-Disparagement clause is adequate mutual consideration for the Neutral Work Reference clause—because the Settlement Agreement includes the two clauses as one provision—neither the briefing nor the Settlement Agreement specifically addresses this issue. Accordingly, the Court is unable to conclude whether including these provisions precludes the settlement from being a fair and reasonable resolution of the parties' FLSA dispute. *See Bell*, 2016 WL 5339706, at *3.

## V.    Severability

The Undersigned notes that the proposed Settlement Agreement contains a severability provision that provides, in relevant part, that "if any portion or provision of this Agreement . . . is determined to be illegal, invalid, or unenforceable . . . and cannot be modified to be legal, valid, or enforceable," the provision will be severed and "the remainder of this Agreement shall not be affected." (Docs. 11-1 at 6).

Notably, the Court has stricken certain unacceptable or unenforceable provisions of a settlement agreement before approving the settlement agreement. *See, e.g.*, *Ramnaraine*, 2016 WL 1376358, at *2-3; *Housen*, 2013 WL 2455958, at *2.

Although the severability provision in the Settlement Agreement would appear to permit this result, the Undersigned recommends against a *sua sponte* revision of the parties' agreement under these circumstances.  The non-cash concessions constitute the bulk of the parties' agreement, and, therefore, any severance would fundamentally and essentially change the nature of the parties' agreement.  Accordingly, the Undersigned finds it is more prudent to allow the parties an opportunity to explain why these concessions are fair and reasonable.

**VI.     Retention of Jurisdiction**

As a final note, the parties' Joint Motion requests that the Court retain jurisdiction to enforce the parties' settlement.  (Doc. 11 at 6).  The parties, however, do not provide any justification for the Court to retain jurisdiction over this case.  Thus, absent a showing of independent jurisdiction or compelling circumstances, the Undersigned is not inclined to recommend that the Court retain jurisdiction.  *See King v. Wells Fargo Home Mortg.*, No. 2:08-CV-307-FTM-29SPC, 2009 WL 2370640, at *1 (M.D. Fla. July 30, 2009).

<b>CONCLUSION</b>

Based upon the foregoing, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.     The parties' Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice (Doc. 11) be **DENIED** without prejudice.

2.      The parties be ordered to elect one of the following options by an

appropriate deadline to be selected by the presiding United States

District Judge:

  a. File an amended joint motion to approve a settlement agreement

    that adequately addresses the issues identified herein and file a

    fully executed settlement agreement that is binding on relevant

    parties if approved by the Court; or

  b. Defendants file an Answer so that this case may proceed and the

    Court can enter an FLSA Scheduling Order.

  **RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida

on January 25, 2021.

             _____

             Mac R. McCoy
             United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

  A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions.  A party's

failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties