UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN A SCHULTZ,

    Plaintiff,

v.                                 Case No.:   2:20-cv-400-SPC-MRM

WILSON LIGHTING OF NAPLES,
INC., BRIAN WILSON and
ROBERT WILSON, III,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice ("Third Joint Motion"), filed on February 23, 2021. (Doc. 14). Plaintiff John A. Schultz III and Defendants Wilson Lighting of Naples, Inc., Brian Wilson, and Robert Wilson III request that the Court approve the parties' settlement and dismiss the case. (Doc. 14 at 2-3).[1] After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the Third Joint Motion (Doc. 14) be **GRANTED in part and DENIED in part**.

---

[1] Unless otherwise specified, pinpoint citations for documents filed in CM/ECF refer to the page number in the CM/ECF legend at the top of the page, not the pagination of the document itself.

## BACKGROUND

Plaintiff filed his Complaint in this matter on June 4, 2020. (Doc. 1). Plaintiff asserts several claims, including a violation of the Fair Labor Standards Act ("FLSA"), alleging that Defendants failed to pay him one and one-half times his base hourly wage rate for hours worked in excess of forty hours per week. (*Id.* at 6). Plaintiff also alleges two breach of contract claims, one asserting that Defendants unilaterally altered the employment contract and the other asserting that Defendants failed to give proper written notice of termination or sufficient cause. (*Id.* at 6-9). Plaintiff, however, does not allege a specific sum of damages for any of his claims. Defendants have not filed an Answer.

The parties filed their first Joint Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice on July 13, 2020. (Doc. 8). On August 4, 2020, the Undersigned issued a Report and Recommendation recommending that the first Joint Motion be denied without prejudice because the Settlement Agreement contained a confidentiality provision. (Doc. 9 at 3-4). The presiding United States District Judge accepted and adopted the Undersigned's Report and Recommendation on August 19, 2020. (Doc. 10). The parties then filed their second Joint Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice on September 30, 2020. (Doc. 11). On January 25, 2021, the Undersigned issued a Report and Recommendation recommending that the second Joint Motion be denied without prejudice because the Court could not evaluate whether the agreement was a fair and reasonable resolution

of the FLSA dispute. (*See generally* Doc. 12). The presiding United States District Judge accepted and adopted the Undersigned's Report and Recommendation on February 9, 2021. (Doc. 13). The parties subsequently filed the Third Joint Motion on February 23, 2021. (Doc. 14).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id.* at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Id*. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's

> overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the Settlement Agreement below.

## ANALYSIS

### I. Bona Fide Dispute

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties. As noted in their Third Joint Motion, Plaintiff alleges that while employed by Defendants, Plaintiff "was misclassified as exempt from the overtime provisions of the FLSA and worked overtime hours for which he was not compensated" and that Defendants breached their contract with Plaintiff. (Doc. 14 at 1 (citing Doc. 1)). Although Defendants have yet to file an Answer in this case, they deny these allegations in the Third Joint Motion. (*Id.* at 2).

Additionally, the parties argue that the settlement of the FLSA claim:

> is the result of their bona fide compromise on a variety of disputes of law and fact, including, without limitation: (a) whether Plaintiff was properly classified under the FLSA; (b) whether Plaintiff worked any compensable time without compensation; (c) whether Plaintiff could prove that he worked any hours for which he was not properly compensated[;] (d) whether Defendant[s] was required to track all of Plaintiff's hours worked in the first instance; (e) whether Plaintiff's claims are barred by the statute of limitations; (f) whether Plaintiff's action was barred by

4

>allegedly engaging in preliminary and/or postliminary activities; (g) whether Defendants' good faith defenses justified any alleged violations of FLSA; and (h) whether one or more of the Defendants were Plaintiff's employer under the FLSA.

(Doc. 14 at 4). Accordingly, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

The Undersigned addresses the monetary terms, attorney's fees, and non-cash concessions separately below.

## II.   Monetary Terms

In his Complaint, Plaintiff contends that he regularly worked in excess of forty hours within a work week and that Defendants deprived him of proper overtime compensation. (Doc. 1 at 6). Plaintiff, however, does not allege a specified sum owed to him. Rather, Plaintiff generally asserts that he is entitled to unpaid overtime wages and "liquidated damages in an amount equal" thereto. (*Id.* at ¶¶ 30-31). Plaintiff's Complaint, however, alleges that prior to his improper reclassification a salaried-exempt employee, he earned $20.00 per hour. (*Id.* at ¶ 12). Additionally, Plaintiff asserts that after his reclassification, he regularly worked approximately ten overtime hours per week. (*Id.* at ¶¶ 21, 38). Plaintiff concedes, however, that he does not have record of the hours he actually worked. (Doc. 14 at 5 (citing Doc. 1 at ¶¶ 21, 24, 38)). As noted above, Defendants deny these allegations. (*Id.* at 3, 5).

The parties' settlement is for a total of $6,000, including $1,250 "as wage based damages," $2,500 "as liquidated and all other damages, including for all other claims," and $2,250 "as attorneys' fees and costs negotiated separately and without

5

regard to the amount paid to settle these claims." (*Id.* at 12). More specifically, of the $2,500 sum to be paid "as liquidated and all other damages," $1,2500[2] [sic] "represents liquidated damages," $850 represents consideration for the Mutual General Release of Claims and Non-Solicitation provisions, and $400 represents consideration for the No Further Employment clause "and all remaining non-monetary terms." (*Id.*).

In explaining the monetary terms of the settlement, the parties assert that:

> Defendant[s], *inter alia*, reviewed all of Defendant's [sic] time and pay records from the beginning of [Plaintiff's] employment through his termination, observed the average number of hours that Plaintiff worked in any given workweek, reviewed handwritten information regarding work hours provided by Plaintiff after March 25, 2018, reviewed Plaintiff's work product, and internally investigated Plaintiff's claims in light of evidence that Plaintiff did not work 10 overtime hours any given week and did not work more than 40 hours in any given workweek.

(*Id.* at 5). The parties, therefore, ultimately explain that "Defendant's [sic] calculations of its [sic] settlement offer is based on the possibility that Plaintiff may have occasionally worked 1-2 hours of overtime in a given workweek during a period of very few workweeks." (*Id.*).

Additionally, the parties aver that they "engaged in detailed settlement

---

[2] It appears that the parties inadvertently added an extra zero to this amount, as $1,250 and the sums remaining listed in Paragraph 3(B)(ii) and 3(B)(iii) would equal the total amount to be allocated as set forth in Paragraph 3(B). The Court, therefore, construes this to be a typographical error and construes the correct amount to be $1,250.

6

discussions . . . [about] the viability of Plaintiff's claims and formulated their own proposed settlement figures." (*Id.*). The parties assert that through their continued discussions and based on "their independent calculations," they "came to an agreement on the amount of alleged unpaid wages and liquidated damages to which Plaintiff may be entitled." (*Id.*). Finally, the parties note that Plaintiff was counseled and represented by his attorneys through the settlement discussions. (*Id.* at 6).

In light of Defendants' quantitative assessment and the parties' averments related to the settlement discussions, it appears that the agreement reflected in the monetary terms of the proposed Settlement Agreement are fair and reasonable. (*See id.* at 5-6; *see also id.* at 12). Accordingly, the Undersigned recommends that the presiding United States District Judge approve the monetary terms of the Settlement Agreement.

### III.   Attorney's Fees

The Settlement Agreement specifies that Defendants agree to pay a total of $2,250 "as attorneys' fees and costs negotiated separately and without regard to the amount paid to settle these claims." (Doc. 14 at 12). Similarly, in the Third Joint Motion, the parties note that "[t]he attorney's fees and costs agreed upon to be paid by Defendants under the Parties' settlement were never (and are not) a percentage of any total recovery in this case." (*Id.* at 8).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

In the instant case, the parties assert that they negotiated the attorneys' fees and costs "separate and apart from the amounts to be paid to Plaintiff" to compromise the claims asserted. (Doc. 14 at 8; *see* Doc. 14 at 12). The Undersigned, therefore, finds that the parties agreed upon the attorney's fees without compromising the amount paid to Plaintiff and that the amount of fees appears fair and reasonable given the procedural posture of this case.

### IV.   Non-Cash Concessions

The proposed Settlement Agreement also contains several non-cash concessions. A number of jurists in this District have expressed the view that non-

8

cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, No. 6:11-CV-1590-ORL-22DAB, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-CV-218-ORL-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-CV-409-ORL-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses each of the non-cash concessions made by the parties under the proposed settlement below.

    A.    **Mutual General Release of Claims**

First, the Settlement Agreement contains a Mutual General Release of Claims provision stating, in relevant part, that "the Wilson Lighting Released Parties" are "fully release[d], acquit[ted], and forever discharge[d]" from:

> [A]ny and all claims, cross-claims, demands, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity, or otherwise, whether known or unknown,

9

> vested or contingent, suspected or unsuspected, that Schultz may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit or Schultz's employment by Wilson Lighting (or the termination thereof).

(Doc. 14 at 13). The clause explicitly releases the following claims:

> [T]hose arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended ("ADEA"); Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); the National Labor Relations Act ("NLRA"); and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim.

(*Id.*).

Notably, this Mutual General Release of Claims provision is not limited to solely the FLSA and breach of contract claims at issue but is, instead, broadly written to include almost any legal claim Plaintiff may have. (*See id.*).

Nonetheless, the provision is a mutual concession, releasing Plaintiff from the following:

> [A]ll claims, cross-claims, demands, liabilities, causes of action, costs, attorneys' fees, expenses, and damages whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or

10

> contingent, suspected or unsuspected, that Wilson Lighting may now have, has ever had, or hereafter may have relating to Schultz from the beginning of time through the Effective Date.

(*Id.*).

As an initial matter, the Undersigned notes that mutual general releases in FLSA settlement agreements are generally problematic. *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-CV-528-FTM-29MRM, 2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 2:17-CV-528-FTM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31, 2018). Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including forgone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-CV-1658-ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). As the Court has noted, however, evaluating unknown claims is a "fundamental impediment" to a fairness determination. *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52. Indeed, the Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims." *Shearer*, 2015 WL 2402450, at *3. Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible." *Id.* (quoting *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-CV-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).

Notwithstanding these difficulties, such provisions may be accepted when the Court can determine that such a clause is fair and reasonable under the facts of the case. *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*, No. 2:18-CV-

165-FTM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-CV-165-FTM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018). In *Vela v. Sunnygrove Landscape & Irrigation Maintenance, LLC*, the Undersigned recommended approving such a provision, but in doing so, the Undersigned emphasized that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement." *Id.* at *3-4.

Here, the parties explain that the Mutual General Release of Claims provision "was specifically bargained for between the parties, supported by consideration set forth in Paragraph 3(B)(ii), as well as by modifications made to the Employment Agreement referenced herein – including Defendant's [sic] release of Plaintiff from his post-employment non-competition restrictive covenant, and was not a condition of the FLSA settlement." (Doc. 14 at 6). Paragraph 3(B)(ii) specifies that $850 "represents consideration for the promises and releases set forth in [the] Mutual General Release of Claims [provision]." (*Id.* at 12). Additionally, the parties argue that Plaintiff and Defendants "had respective non-FLSA claims and counterclaims that could be brought against the other and agreed to release all claims as set forth in the agreement." (*Id.* at 6).

In light of the parties' briefing, the Undersigned finds that the provision in the Settlement Agreement is supported by separate consideration and likely to the benefit of all parties. Accordingly, the Undersigned recommends that the Mutual General Release of Claims provision be approved. *See Bell*, 2016 WL 5339706, at *3; *see also*

*Rivera v. CO2Meter*, No. 6:17-CV-156-ORL-28GJK, 2018 WL 3213329, at *4 (M.D. Fla. June 14, 2018), *report and recommendation adopted*, *Rivera v. CO2Meter, Inc.*, No. 6:17-CV-156-ORL-28GJK, 2018 WL 3212455 (M.D. Fla. June 29, 2018) (allowing a general release provision when separate consideration was received for the condition).

B.  **Non-Solicitation**

Notably, the parties' Mutual General Release of Claims provision contains a Non-Solicitation provision prohibiting Plaintiff "from solicitating any Wilson Lighting employee or any Wilson Lighting customers for the two (2) year period beginning January 3, 2020." (Doc. 14 at 13). The parties assert that the Non-Solicitation provision "was specifically bargained for between the parties, supported by consideration set forth in Paragraph 3(B)(ii)," which includes $850 set aside for the Mutual General Release of Claims provision that includes the non-solicitation clause, "as well as by modifications made to the Employment Agreement." (*Id.* at 6). Additionally, the parties contend that as additional consideration for the Non-Solicitation provision, Defendants have "release[d] Plaintiff from his post-employment non-competition restrictive covenant." (*Id.*). Finally, the parties agree that this provision is "not a condition of the FLSA settlement." (*Id.*).

In light of the parties' briefing, the Undersigned finds the non-solicitation provision is supported by separate consideration and, therefore, recommends that the Non-Solicitation provision be approved. *See, e.g.*, *Siebert v. Novak Env't Servs., LLC*, No. 2:18-CV-796-FTM-99MRM, 2019 WL 2929545, at *4 (M.D. Fla. July 7, 2019),

13

*report and recommendation adopted*, No. 2:18-CV-796-FTM-38MRM, 2019 WL 2929544 (M.D. Fla. July 8, 2019).

### C. No Further Employment

Additionally, the Settlement Agreement contains a No-Further-Employment provision stating, in relevant part, that Plaintiff "affirms that he does not wish to work for Wilson Lighting or the Released Parties ever again" and, "therefore[,] agrees never to apply for employment with the Wilson Lighting Released Parties." (Doc. 14 at 15).  Moreover, Plaintiff agrees that "[i]n the event [he] is ever mistakenly employed by the Wilson Lighting Released Parties, [Plaintiff] agrees to have his employment terminated with no resulting claim or cause of action against the Wilson Lighting Released Parties for such termination." (*Id.*).

The parties contend that the provision was "specifically bargained for between the Parties, supported by consideration, not a condition of the FLSA settlement, and the Parties agreed that the terms were fair and reasonable in light of the aims of the Parties to settle their dispute and permanently part ways." (*Id.* at 7).  Notably, Paragraph 3(B)(iii) sets forth an amount of $400 to represent separate consideration of this provision.  (*Id.* at 12).

Here, because Plaintiff does not desire to work with Defendants in the future, and there is no indication that the clause undermines the fairness of the Settlement Agreement, the Undersigned finds that the provision does not preclude approval of the Settlement Agreement.  *See Rivera*, 2018 WL 3213329, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 2:09CV1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12,

2011) and approving a no reemployment clause where the plaintiff does not desire future employment and there is no indication that the provision undermines the fairness of the settlement agreement).

> D.   **Non-Disparagement and Neutral Work Reference**

The parties also included a Non-Disparagement and Neutral Work Reference provision. (Doc. 14 at 15). The provision provides, in pertinent part, that:

> The Parties agree that they shall not make disparaging statements about one another . . . . [I]n response to any inquiry regarding [Plaintiff's] employment with Wilson Lighting, Wilson Lighting shall provide a neutral work reference consisting of only [Plaintiff's] dates of employment and last position held, and shall not refer to the Lawsuit, the existence or terms of this agreement, and will not make any disparaging remark about [Plaintiff]. The Parties agree that the reciprocal nature of this term is intended as sole consideration because all Parties derive equal benefit from its inclusion.

(*Id.*).

Notably, "Courts within this circuit routinely reject . . . non-disparagement clauses contained in FLSA settlement agreements because they 'thwart Congress's intent to ensure widespread compliance with the FLSA.'" *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-CV-710-ORL-22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-CV-710-ORL-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-CV-615-ORL-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014)). The Court has also noted that "[p]rovisions in a FLSA settlement agreement that call for . . . prohibiting disparaging remarks contravene FLSA policy

15

and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-CV-461-J-15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. Apr. 19, 2010); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09-CV-2250-T-23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010)). The Undersigned has found that the same concerns are also inherent in a Neutral Work Reference provision. *See Diviney v. Inisron Cafe Inc.*, No. 2:18-CV-236-FTM-38MRM, 2019 WL 5110620, at *2-3 (M.D. Fla. July 2, 2019), *report and recommendation adopted*, No. 2:18-CV-236-FTM-38MRM, 2019 WL 5140307 (M.D. Fla. July 18, 2019).

Nevertheless, when such provisions are negotiated for separate consideration or there is a reciprocal agreement that benefits all parties, the Court may approve the clauses. *See Bell*, 2016 WL 5339706, at *3; *Smith*, 2014 WL 5690488, at *4 (citing *Caamal v. Shelter Mortg. Co.*, No. 6:13-CV-706-ORL-36, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013)).

Here, the parties specifically "agreed that it was in their mutual best interest to ensure that neither Party made disparaging statements about one another and that, in exchange for and in furtherance of such mutual promises, Defendant [sic] would provide only a neutral work reference." (Doc. 14 at 7). Moreover, the Settlement Agreement provides "that the reciprocal nature of this term is intended as sole consideration because all Parties derive equal benefit from its inclusion." (*Id.* at 15). Thus, because the provision is a reciprocal agreement that benefits all parties, the

16

Undersigned finds that it does not preclude approval of the Settlement Agreement. *See Bell*, 2016 WL 5339706, at *3.

## V. Severability

The Undersigned notes that the proposed Settlement Agreement contains a severability provision that provides, in relevant part, that "if any portion or provision of this Agreement . . . is determined to be illegal, invalid, or unenforceable . . . and cannot be modified to be legal, valid, or enforceable," the provision will be severed and "the remainder of this Agreement shall not be affected." (Doc. 14 at 16).

Because the Undersigned recommends that the remainder of the Settlement Agreement be approved as fair and reasonable, the severance provision need not be enforced. If, however, the presiding District Judge finds that any part of the Settlement Agreement is not fair and reasonable, the Undersigned recommends that the presiding District Judge refrain from using the severability provision and instead deny the Third Joint Motion because severance would likely fundamentally and essentially change the nature of the parties' agreement.

## VI. Retention of Jurisdiction

In their Third Joint Motion, the parties request that the Court "reserv[e] jurisdiction to enforce the terms of the parties' Settlement Agreement." (*Id.* at 9). The parties requested the same relief in the second Joint Motion. (*See* Doc. 11 at 6). The parties again fail to provide any justification for the Court to retain jurisdiction for any period of time, much less indefinitely. (*See* Doc. 14 at 9). As explained in the January 25, 2021 Report and Recommendation, the Undersigned is not inclined

17

to recommend that this Court retain jurisdiction without a specific articulation of independent jurisdiction or other compelling circumstances. (*See* Doc. 12 at 17 (citing *King v. Wells Fargo Home Mortg.*, No. 2:08-CV-307-FTM-29SPC, 2009 WL 2370640, at *1 (M.D. Fla. July 30, 2009))). Thus, the Undersigned recommends that the presiding United States District Judge deny the request for the Court to retain jurisdiction to enforce the parties' settlement.

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice (Doc. 14) be **GRANTED in part and DENIED in part** as follows:

    a. The Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice (Doc. 14) be **GRANTED** to the extent it seeks judicial approval of the proposed Settlement Agreement (Doc. 14 at 11-19) as a fair and reasonable compromise of Plaintiff's FLSA claim;

    b. The Joint Renewed Motion for Approval of Parties' Settlement Agreement and Stipulation of Dismissal with Prejudice (Doc. 14) be **DENIED** to the extent it seeks this Court to retain jurisdiction to enforce the terms of the parties' Settlement Agreement.

    2.    The Settlement Agreement (Doc. 14 at 11-19) be approved as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claim;

    3.    The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on April 26, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. The parties are warned that the Court will not extend these deadlines. To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties